UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

STAMP FARMS, L.L.C., *et al.*,[1]                    Case No. DK 12-10410
                                                     Chapter 11
                    Debtor.                          Hon. Scott W. Dales

_____/

## SUPPLEMENTAL OPINION AND ORDER REGARDING
## BID PROCEDURES FOR BULK SALE

PRESENT:    HONORABLE SCOTT W. DALES
            United States Bankruptcy Judge

The court held a hearing in Grand Rapids, Michigan on January 28, 2013 to consider the procedures that will govern the Debtors' imminent auction of substantially all the assets of the bankruptcy estates. Although the Debtors' proposed procedures drew numerous objections, generally pertaining to the authority of secured creditors to "credit bid" under Section 363(k), the parties commendably resolved most of their differences regarding sale procedures, while reserving other sale objections until the Sale Hearing, presently scheduled to take place on February 7, 2013, in Grand Rapids.

Despite this consensus, the United States Trustee continued to challenge the propriety of the "Break Up Fee" that the Debtors and their stalking horse bidder, Boersen Farms, Inc. ("Boersen Farms"), prescribed in the Asset Purchase Agreement ("APA," DN 265-1) at § 4.4. At the request of the parties, the court heard the proffer of Patrick O'Keefe, qualified him as an expert witness under Fed. R. Evid. 701, administered an oath, and permitted the United States Trustee and others to cross-examine him. At the

_____

[1] The Debtors are: Stamp Farms Trucking, L.L.C. (Case No, 12-10411); Stamp Farms Custom AG, L.L.C. (Case No. 12-10416); and Royal Star Farms, L.L.C. (Case No. 12-10417).

conclusion of the testimony, the court announced its intention to approve the Break Up Fee. This opinion supplements the court's oral findings, and together with those findings, constitute the court's findings of fact and conclusion of law in accordance with Fed. R. Bankr. P. 7052 and 9014(c).

First, the court accepts Mr. O'Keefe's proffer and credits his testimony. Based on his testimony, the court finds that the Break Up Fee is a customary, reasonable, and necessary cost that provides a substantial benefit to the estate. Mr. O'Keefe explained that such fees are typical in transactions of the sort that the Debtors are proposing in order to induce the initial interested party —the "stalking horse"— to invest the time and expense of investigating bankruptcy assets and making an opening bid. In Mr. O'Keefe's opinion, based on years of service as a certified public accountant and well-regarded turnaround professional, the Break Up Fee in this case is lower than the 3% break up fees he has typically encountered in his practice. Moreover, he credibly testified that at least one and possibly more bidders have expressed an interest in bidding (and will likely be qualified as bidders), precisely because Boersen Farms formally expressed its interest in bidding by signing the APA. In his opinion, which the court shares, Boersen Farms would not have agreed to incur the expense and risk of serving as stalking horse bidder without the protection that the 2.5% Break Up Fee affords.[2]

Moreover, Mr. O'Keefe confirmed the court's reading of the APA by explaining that the Break Up Fee poses no risk to the estate because it is payable only upon the closing of a sale to a third party purchaser. In that event, given the overbid protection elsewhere conferred, the sale proceeds would pay the Break Up Fee at closing, and would

---

[2] The APA states that the "Break Up Fee" shall be 2.5% of the "Purchase Price." *See* APA at §§ 2.1.1 & 4.4.

result in netting a higher return for the estate. Furthermore, if the bulk sale does not close, the estate incurs no obligation to pay the Break Up Fee.

The court agrees with counsel for the Official Committee that the circumstances of the case require the court to approve (or disapprove) the Break Up Fee in advance of the auction.  In order to induce others to compete at the auction, the estate needs a stalking horse bidder, and in order to secure a stalking horse bidder, the estate had to commit in advance to pay Boersen Farms for serving in this role. It is more likely than not that without the Break Up Fee, Boersen Farms would not agree to serve as stalking horse, and would not have the effect of spurring others to participate at the auction.

Finally, as the court explained on the record, expediting the bulk sale, though not without risk of error and resulting litigation, promises the best hope for maximizing value by effecting the transfers in time to permit spring planting on many thousands of acres in Southwest Michigan. Seasonal forces, not the selfish impulses of any particular player, create the urgency that we must now address by arranging an admittedly hasty sale. Although the court shares the United States Trustee's concerns about the mounting administrative expenses associated with the sale, the court concludes that, on balance, the bulk sale offers the greatest opportunity to benefit the estate's numerous constituents, including secured and unsecured creditors and the non-debtor parties to the numerous farmland leases. A prompt sale creates the possibility of extricating many or all of these landowners from this proceeding so they may again conduct their own affairs without the uncertainty that this case inevitably creates for them (pending assumption or rejection of their leases). The court, the Debtors and the other parties are making the best of a bad situation.

The court will enter a separate order approving the Break Up Fee and the bid procedures as modified on the record.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall serve a copy of this Opinion pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Michael S. McElwee, Esq., Robert D. Mollhagen, Esq., Diana Psarras, Esq., Steve Jakubowski, Esq., John R. Burns, Esq., Michael R. Stewart, Esq., Wendy K. Walker-Dyes, Esq., Colin F. Dougherty, Esq., the United States Trustee, and all parties who have requested notice in this case.

END OF ORDER

**IT IS SO ORDERED.**

**Dated January 29, 2013**



Scott W. Dales
United States Bankruptcy Judge